```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
------------------------------------

STANLEY HOLMES,

                Plaintiff,

        -against-

THE CITY OF NEW YORK, *et al.*,

                Defendants.

------------------------------------

17cv3874

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Stanley Holmes brings this pro se federal civil rights action against the City of New York (the "City") and various prison officials at the Anna M. Kross Center on Rikers Island ("AMKC") and the Manhattan Detention Complex ("MDC"), alleging constitutional violations while detained at those facilities. He names as individual defendants AMKC Superintendent Joseph Ponte, AMKC Warden Maxsolaine Mingo, AMKC Corrections Officer Travis Griffith, a John Doe medical provider at the AMKC, MDC Warden Raleem Moses, MDC Captain Williams, MDC Corrections Officer Joel Castillo, and a John Doe medical provider at the MDC.

        The City, Superintendent Ponte, Warden Mingo, and Warden Moses (the "Moving Defendants"), move to dismiss Holmes' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Despite two extensions of time to oppose the motion and an order directing the motion papers to be re-served on him, Holmes filed no opposition papers. Thus, this Court treats the Moving Defendants' motion as unopposed. For the reasons that follow, the motion to dismiss is granted.

## BACKGROUND

        The Moving Defendants purport to move against the initial complaint (the

"Complaint") due to Holmes' alleged failure to timely file an amended complaint. In relevant part, this Court directed Holmes to file an amended complaint (the "Amended Complaint") by December 5, 2017. (ECF No. 25.) Upon receiving notice that Defendants received a copy of the amended pleading by mail on December 8, 2017 but that it had not been filed on the docket, this Court ordered Holmes to mail the amended complaint to the Pro Se Intake Unit. (ECF No. 27.) Holmes appears to have delivered the Amended Complaint to prison officials to be mailed to this Court and defense counsel on December 3, 2017, rendering it timely. See Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001) (explaining that under the "prison mailbox" rule, a filing is deemed to have been filed on the date it was delivered to prison officials to be sent to the Clerk of Court). The Amended Complaint also reveals Holmes' efforts in mailing the pleading to the Pro Se Intake Unit in conformity with this Court's January 9, 2018 order. In view of Holmes' "dependence on the prison mail system and lack of counsel to assure timely filing," Noble, 246 F.3d at 97, a rigid application of filing requirements is unwarranted—especially based on the absence of any prejudice to Defendants. Accordingly, this Court considers the factual allegations and documents attached to the Amended Complaint as well as the Complaint. See Bridgewater v. Taylor, 698 F. Supp. 2d 351, 355 n.2 (S.D.N.Y. 2010).

Holmes' claims stem from three occasions in which he was inadvertently exposed to M.K.9 chemical spray. On January 4, 2016 at AMKC, Officer Travis Griffith sprayed another inmate with M.K.9 chemical spray in a holding pen adjacent to Holmes. (Am. Compl. ¶¶ 4-5.) The gas from the spray diffused into Holmes' open-faced pen. (Am. Compl. ¶ 4.) As a result, he suffered a 20 to 60 minute coughing fit and burning sensations on his skin and eyes. (Am. Compl. ¶ 8.) No medical personnel were present at the time of the spraying, and although Holmes informed a John Doe medical provider at the AMKC that he needed medical assistance

when the medical provider walked by his pen, the medical provider failed to provide medical treatment. (Am. Compl. ¶ 5.) Holmes now requires an inhaler and suffers from panic attacks and mental anguish. (Am. Compl. ¶ 8.) When Plaintiff attempted to file a grievance, he was told by grievance staff that the incident was not covered by the grievance procedure. (Am. Compl. ¶ 8.)

Two similar incidents took place at MDC on April 4, 2016. Holmes alleges that in both incidents, Officer Castillo sprayed inmates in a nearby cell with M.K.9 chemical spray. (Am. Compl. ¶ 12.) The gas from the spray leaked into Holmes' cell. (Am. Compl. ¶ 12.) After exposure, Holmes suffered from a coughing attack that lasted between 20 to 60 minutes and experienced burning sensations on his eyes and skin. (Am. Compl. ¶ 16.) Moreover, because Holmes had fractured his ribs from an unrelated incident, he claims that the coughing caused him "beyond 'extreme' pain." (Am. Compl. ¶ 16.) Holmes claims that he was coughing for days, and when he visited a medical clinic three days later, a John Doe medical provider only offered an injection to help him stop coughing. (Am. Compl. ¶ 13; Compl. at 3.) Since the incidents, Holmes has had to use an inhaler and a nebulizer and suffers from panic attacks and mental anguish. (Am. Compl. ¶ 16.) After the MDC incidents, Holmes submitted a grievance with the prison but claims that it was never processed because he never received any response. (Am. Compl. ¶ 17.)

This Court construes the Amended Complaint to raise Fourteenth Amendment due process claims based on Holmes' exposure to M.K.9 chemical spray released by Officers Griffith and Castillo, the failure to render medical care by the John Doe defendants, and the failure to properly train or supervise by Superintendent Ponte, Warden Mingo, Warden Moses,

Captain Williams, and the City.[1]  Finally, Holmes asserts that his First Amendment rights were violated because AMKC and MDC grievance staff failed to file or otherwise ignored his grievances in connection with his exposure to chemical spray.[2]

## LEGAL STANDARD

To withstand dismissal, a pleading "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  Thus, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  Although the plausibility standard is "not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.  In deciding a motion to dismiss under Rule 12(b)(6), a court must accept factual allegations as true and construe all reasonable inferences in the plaintiff's favor.  ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009).

Where a plaintiff is proceeding pro se, courts liberally construe the complaint, which, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  This maxim applies with particular force when a pro se plaintiff alleges a violation of his civil rights.  Sealed Plaintiff

---

[1]  Holmes brings his claims based on exposure to M.K.9 chemical spray under both the Eighth and Fourteenth Amendments.  However, because he claims to have been a pretrial detainee, (Am. Compl. ¶¶ 8, 16), the Fourteenth Amendment—not the Eighth Amendment—applies to his constitutional challenges because pretrial detainees "have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise," see Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (citation and quotation marks omitted).

[2]  The Prison Litigation Reform Act requires a prisoner "confined in any jail, prison, or other correctional facility" to exhaust all administrative remedies before bringing an action to challenge prison conditions.  42 U.S.C. § 1997e(a).  While "[f]ailure to exhaust administrative remedies is an affirmative defense," a district court "may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement."  Williams v. Corr. Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016).  The Moving Defendants do not raise exhaustion in their brief, and in any event, it is unclear from the face of the complaint whether Holmes exhausted the grievance procedures given the ambiguity in when he was transferred from facility to facility.

v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). Thus, this Court affords Holmes "special solicitude" by interpreting his complaint "to raise the strongest claims that it suggests." Hardaway v. Hartford Public Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018) (quotation marks omitted). However, a pro se plaintiff must still "allege 'enough facts to state a claim to relief that is plausible on its face.'" Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

DISCUSSION

I. Municipal Liability

A municipality may not be held liable under § 1983 under a theory of respondeat superior. Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citing Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978)). To establish a municipal liability claim, "a plaintiff is required to plead and prove three elements (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) denial of a constitutional right." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 140 (2d Cir. 2010). Such a policy or custom may be demonstrated by "(1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised deliberate indifference to the rights of the plaintiff and others encountering those subordinates." Roundtree v. City of New York, 2018 WL 1586473, at *13 (S.D.N.Y. Mar. 28, 2018) (quotation mark omitted) (citing McLennon v. City of New York, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016)).

Here, the Amended Complaint lacks any factual allegations suggesting the

existence of a formal policy or any actions or decisions made by municipal decisionmakers that caused Holmes to be exposed to chemical spray, caused his requests for medical attention to go unanswered, or caused his grievances to be ignored. Similarly, while Holmes alleges that other inmates suffered along with him and that another inmate submitted a grievance in connection with the AMKC incident, these facts standing alone do not give rise to the inference that such incidents of M.K.9 exposure, failure to render medical attention, or failure to file grievances are so widespread or persistent as to impute liability to the City. Instead, Holmes merely alleges that the City oversees all inmates in its facilities and failed to train or supervise Officers Griffith and Castillo in the proper use of M.K.9 spray. Such unadorned assertions, which sound in respondeat superior, do not suffice. See Zahra, 48 F.3d at 685; see also Roundtree, 2018 WL 1586473, at *13 (explaining that a complaint must offer more than naked assertions devoid of further factual enhancement, but must allege facts tending to support an inference that a municipal policy or custom exists).

As the Supreme Court has recognized, "[a] municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on failure to train." Connick v. Thompson, 563 U.S. 51, 60 (2011). And for good reason—where municipal liability is based on inaction, "rigorous standards of culpability and causation must be applied to ensure against vicarious liability." Matsusick v. Erie Cty. Water Auth., 757 F.3d 31, 73 (2d Cir. 2014). Therefore, because deliberate indifference is a "stringent standard of fault" that contemplates that a municipal actor "disregarded a known or obvious consequence of his action," a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 61-62 (citation omitted). Holmes' pleading falls short of this standard—he does not allege any pattern of similar

incidents or that prior to the incidents alleged in the Amended Complaint, the City had any reason to believe that its corrections officers would engage in the allegedly unconstitutional deployment of chemical sprays without adequate training. Accordingly, the Monell claims against the City are dismissed.

II. Individual Liability

At the outset, the official capacity claims against all individual defendants are dismissed based on Holmes' failure to allege that the challenged conduct was performed pursuant to a municipal policy or custom. See Hafer v. Melo, 502 U.S. 21, 25 (1991) (explaining that because "the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law" (citations and quotation marks omitted)); accord Lore v. City of Syracuse, 670 F.3d 127, 168 (2d Cir. 2012) ("A § 1983 claim against . . . an official sued in his official capacity, however, cannot be sustained unless the plaintiff shows that the violation of [his] federal rights was the result of a municipal custom or policy."). On the other hand, to establish personal liability for a § 1983 claim, the conduct must have (1) been performed by a person acting under the color of state law; and (2) deprived the plaintiff of his rights, privileges or immunities under the Constitution or the laws of the United States. Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted).

A. Personal Involvement

A municipal employee must also be "personally involved" in the alleged constitutional deprivation to be liable under a § 1983 claim in his individual capacity. Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (citations and quotation marks omitted). Prior to Iqbal, the Second Circuit held that personal involvement may be established by (1) direct

participation in the alleged constitutional violation; (2) failure to remedy the wrong after being informed of the violation through a report or appeal; (3) creation of a policy or custom under which unconstitutional practices occurred, or allowing the continuance of such a policy or custom; (4) grossly negligent supervision of subordinates who committed the wrongful acts; or (5) deliberate indifference to the rights of plaintiffs by failing to act on information indicating that unconstitutional acts were occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

To be sure, the continued vitality of Colon's pronouncements regarding the personal involvement of municipal supervisors is uncertain in light of Iqbal's confirmation that "liability for supervisory government officials cannot be premised on a theory of respondeat superior [or vicarious liability] because § 1983 requires individual, personalized liability on the part of each government defendant." Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014); see also Iqbal, 556 U.S. at 677 (rejecting argument that "a supervisor's mere knowledge of his subordinate's [unconstitutional conduct] amounts to the supervisor's violating the Constitution"). Although the Second Circuit continues to reference the Colon categories, it has not expressly stated whether and to what extent they survive Iqbal. See Corbett v. Annucci, 2018 WL 919832, at *6 n.5 (S.D.N.Y. Feb. 13, 2018); see also Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (observing that "the Supreme Court's decision in [Iqbal] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations").

Nonetheless, that stream need not be forded at this time because Holmes' allegations as to Superintendent Ponte, Warden Mingo, Warden Moses, and Captain Williams fail to satisfy even Colon. In this Circuit, a failure-to-supervise theory requires a plaintiff to show that the supervisory defendant "knew or should have known that there was a high degree of

8

risk" of wrongdoing by subordinates but "deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk." Dunham v. City of New York, 295 F. Supp. 3d 319, 331 (S.D.N.Y. 2018).  But aside from listing their names and official titles, Holmes alleges at most that (1) Superintendent Ponte and Warden Mingo "failed to properly train" Officer Griffith in properly using chemical spray at AMKC and "failed to properly supervise and/or assure that proper protocol was followed"; and (2) Warden Moses and Captain Williams "failed to properly train or supervise" Officer Castillo in properly using chemical spray at MDC and "failed to properly supervise and/or assure that proper protocol was followed."  (Am. Compl. ¶¶ 5, 13.)  These generalized allegations are plainly insufficient.  The Amended Complaint contains no <u>factual</u> allegations, for example, suggesting that the supervisory defendants knew or should have known of any pattern of prior misconduct by subordinate corrections officers in deploying chemical spray.  Thus, the individual capacity claims against Superintendent Ponte, Warden Mingo, Warden Moses, and Captain Williams are dismissed.

On the other hand, the Amended Complaint sufficiently alleges the personal involvement of Officer Griffith, Officer Castillo, and the John Doe medical personnel through their direct participation in the challenged conduct—i.e., the actual use of the chemical spray and the failure to render medical treatment.  The Moving Defendants do not appear to dispute that these defendants were acting under the color of state law.  Thus, this Court turns to whether their conduct amounted to a deprivation of Holmes' constitutional rights.

B.  Fourteenth Amendment Claims

This Court liberally construes the Amended Complaint to raise claims for excessive force and deliberate indifference to conditions of confinement based on Holmes'

exposure to chemical spray and claims for deliberate indifference to his medical needs based on the John Doe defendants' alleged failure to render medical care. Each is addressed in turn.

1. Excessive Force

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (citations omitted). For such a claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). Although the Supreme Court left open the possibility that the reckless use of force may suffice in certain cases, it reiterated that the accidental or negligent infliction of harm "is categorically beneath the threshold of constitutional due process." Kingsley, 135 S. Ct. 2472-73 (quotation mark omitted). The objective reasonableness of the force used may be analyzed using contextual factors such as the "relationship between the need for the use of force and the amount of force used;" "the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Edrei v. Maguire, 892 F.3d 525, 534 (2d Cir. 2018) (quotation marks omitted) (citing Kingsley, 135 S. Ct. at 2472-73). These non-exhaustive considerations "inform the ultimate Fourteenth Amendment inquiry: whether the governmental action was rationally related to a legitimate governmental objective." Edrei, 892 F.3d at 536.

Here, the Amended Complaint alleges only that nearby inmates were sprayed without further elaboration as to the circumstances that precipitated the incidents. While the grievance forms attached to the complaint add that the spraying at AMKC lasted for 60 seconds and that the spraying at MDC occurred "during a special search (or) search team that was not

intended for [Holmes]," such facts still fail to plausibly allege that the use of the chemical spray was unreasonable. Moreover, Holmes concedes that for all three incidents, the spray was intended for other inmates. These allegations at most suggest that his exposure to chemical spray was accidental or negligent—not purposeful or knowing. Because such infliction of harm is "categorically beneath the threshold of constitutional due process," Kingsley, 135 S. Ct. at 2472, Holmes' excessive force claims are dismissed, accord Vargas v. N.Y.C. Dep't of Corr., 2018 WL 3392873, at *3 (S.D.N.Y. July 12, 2018).

### 2. Deliberate Indifference to Conditions of Confinement

A pretrial detainee "may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). Thus, the plaintiff must satisfy two prongs to prove a claim: (1) an "objective" prong showing that the "challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) a "subjective" prong—more aptly characterized as a "mens rea" prong— showing that "the officer acted with at least deliberate indifference to the challenged conditions." Darnell, 849 F.3d at 29.

As to the subjective prong, the pretrial detainee "must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35. The detainee must still demonstrate that the "official acted intentionally or recklessly, and not merely negligently." Darnell, 849 F.3d at 36.

In this case, Holmes does not allege that Officer Griffith intentionally exposed

11

him to the chemical spray. And although the Amended Complaint avers that Officer Griffith "knew or should have known that other inmates and staff in the area would suffer the same or worse effects as the intended victim of the spray," (Am. Compl. ¶ 5), such a statement merely recites the subjective prong without alleging any factual matter demonstrating that he knew or should have known of any risk to unintended targets of the spray.

While the factual allegations relating to Officer Castillo are marginally more specific, the same conclusion obtains. In particular, Holmes suggests that Officer Castillo sprayed detainees at MDC on two separate occasions on April 4, 2016 and claims that upon spraying one of the detainees, Captain Williams yelled to Officer Castillo, "I told you don't do that! What did you do that for?" (Am. Compl. ¶ 13.) But even drawing all reasonable inferences in Holmes' favor, this Court cannot conclude that such allegations standing alone indicate that Officer Castillo knew or should have known that the chemical spray could pose a risk of harm to detainees in adjacent pens. Holmes does not, for example, indicate whether Officer Castillo witnessed Holmes' (or any adjacent detainee's) reaction to the chemical spray or if he even remained in the vicinity after deploying it. Accord Rivera v. Fenelon, 2017 U.S. Dist. LEXIS 162790, at *9 (S.D.N.Y. Sept. 29, 2017). Because Holmes has not plausibly alleged the second prong of a deliberate indifference claim, this Court does not address whether the residual chemical spray was sufficiently serious to constitute an objective deprivation. Accordingly, the deliberate indifference claims against Officers Griffith and Castillo in their individual capacities are dismissed.

### 3. Deliberate Indifference to Medical Needs

To adequately plead a Fourteenth Amendment due process claim, "a plaintiff alleging failure to provide medical treatment to a prisoner must show 'deliberate indifference to

serious medical needs.'" Man Zhang v. City of New York, 2018 WL 3187343, at *7 (S.D.N.Y. June 28, 2018) (quoting Ziglar v. Abbasi, 137 S. Ct. 1843, 1864 (2017)). Courts analyze such claims under an analogous two-prong test to that which applies to claims for deliberate indifference to conditions of confinement. Thus, a plaintiff must first satisfy an objective prong, which requires the alleged medical need to be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists."[3] Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)); see also Henderson v. Doe, 1999 WL 378333, at *2 (S.D.N.Y. June 10, 1999) (discussing examples of medical conditions that meet and do not meet this standard). However, a plaintiff need not show that he "experience[d] pain that is at the limit of human ability to bear, [or] that [his] condition will degenerate into a life-threatening one." Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003). And as with all Fourteenth Amendment deliberate indifference claims, a pretrial detainee must establish "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 30.

Holmes' failure to satisfy the objective prong is fatal to his claim against the John Doe medical provider at AMKC. Specifically, the Amended Complaint reveals that at the time the John Doe medical provider ignored Holmes' request for medical assistance, Holmes was afflicted by a 20-60 minute coughing fit and burning sensations on his skin and eyes. (Am. Compl. ¶¶ 5, 8.) But while undoubtedly uncomfortable and painful, these temporary effects of

---

[3] Where, as here, the "unreasonable medical care is a failure to provide any treatment for a [detainee's] medical condition," the inquiry focuses on whether the medical condition is sufficiently serious. Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).

13

chemical spray are not serious medical needs because they do not rise to the level of producing death, degeneration, or extreme pain. See Lewis v. Clarkstown Police Dep't, 2014 WL 1364934, at *7 (S.D.N.Y. Mar. 31, 2014) (rejecting a deliberate indifference claim based on the effects of OC gel as a matter of law, reasoning that "courts within this Circuit have previously found that the temporary discomfort caused by pepper spray or mace does not constitute a 'sufficiently serious' injury" (citation omitted)); cf. White v. Williams, 2016 WL 1237712, at *11 (N.D.N.Y. Jan. 11, 2016) (finding injuries to an inmate's eye and ribs, coughing and spitting up blood, cuts to the inmate's face, and lingering chest pain "not to constitute serious medical needs as a matter of law").

The deliberate indifference claim against the John Doe medical provider at MDC fares no better. Admittedly, the MDC incidents depict a more serious medical need, both in terms of severity as well as duration. First, Holmes asserts that his previously fractured ribs exacerbated the pain he experienced from the chemical spray–induced coughing.[4] (Am. Compl. ¶ 16.) Second, the coughing—and presumably any attendant rib pain—lasted at least until Holmes visited the John Doe medical provider three days later. (Am. Compl. ¶ 13; Compl. at 3.) Critically, however, courts have found that similar (or more severe) injuries do not constitute a serious medical need. See Sloane v. Borawski, 64 F. Supp. 3d 473, 494 (W.D.N.Y. 2014) (holding that even if defendant ignored plaintiff's "broken ribs, an ankle fracture[,] and a 'lower right-side back injury,'" plaintiff could not satisfy the objective prong of the deliberate indifference standard). But see Torres v. N.Y.C. Dep't of Corr., 1995 WL 63159, at *1 (S.D.N.Y. Feb. 15, 1995) (mentioning in passing that "a broken rib could present a serious

---

[4] Holmes alleges that the convergence of these two conditions resulted in "beyond 'extreme' pain." (Am. Compl. ¶ 16.) But "'subjective complaints of pain are not sufficient to satisfy [the serious medical need] standard.'" Martinez v. Aycock-West, 164 F. Supp. 3d 502, 512 (S.D.N.Y. 2016) (alteration in Martinez) (citation omitted).

14

medical need"). The Amended Complaint is bereft of allegations that shed light on the seriousness of the prior rib injury, what treatment Holmes had sought, when it occurred, or the extent to which it had healed at the time of the MDC spraying incidents. Nor does Holmes indicate whether the John Doe medical provider had any basis to know that Holmes had previously suffered from a broken rib or that his condition might develop into anything more serious at the time he visited the medical clinic. Under these circumstances, Holmes' claim against the John Doe medical provider at MDC must also be dismissed.

Finally, the Second Circuit has observed that courts generally reject the dismissal of suits against John Doe defendants "until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials." Davis v. Kelly, 160 F.3d 917, 921 (2d Cir. 1998); see also Kearse v. Lincoln Hosp., 2009 WL 1706554, at *3 (S.D.N.Y. June 17, 2009). This precept, however, is not a hard and fast rule. Cf. Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997) ("This opinion is not intended to preclude a finding by the district court, after further inquiry, that the information available is insufficient to identify the defendant with enough specificity to permit service of process, so that dismissal of the complaint is warranted"). Here, in response to a Valentin order, the City was unable to identify the John Doe medical provider at AMKC based on the information in the Complaint and after requesting additional identifying detail from Holmes. (See ECF Nos. 15 and 22.) And while the John Doe medical provider at MDC may ostensibly be identified based on Holmes' medical records, further efforts would be futile because the claims against that defendant are insufficiently pled. Thus, no further discovery to identify the John Doe defendants is warranted because "it is clear that discovery would not uncover the identities, or that the [claims] would be dismissed on other grounds." Valentin, 121 F.3d at 75 (quoting Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).

15

C. First Amendment Claim

Holmes claims that his First Amendment right to petition the government for redress of grievances was violated because AMKC and MDC grievance staff did not file or respond to his grievances regarding his exposure to chemical spray. In particular, he alleges that AMKC grievance staff informed him that he could not file a grievance for the M.K.9 incident because it was not covered by the applicable grievance procedure. According to Holmes, he attempted to file grievances, but none were ever processed. Similarly, he avers that although he filed an inmate grievance while at MDC, he was told that the grievance procedure did not encompass the M.K.9 incidents and ultimately received no response.

As an initial matter, Holmes' failure to name any of the grievance staff members who allegedly denied his requests to file grievances as defendants is fatal to his First Amendment claim—nor does he allege that any of the named individual defendants had any personal involvement. But even if he did, such a claim fails on the merits. For one thing, courts have recognized that inmate grievance procedures are not constitutionally required, and allegations that prison officials violated or failed to enforce those procedures do not give rise to a § 1983 claim.[5] See, e.g., Cancel v. Goord, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001). Thus, Holmes' reliance on the AMKC and MDC's alleged failure to process or respond to Holmes' grievances is unavailing. See Shell v. Brzezniak, 365 F. Supp. 2d 362, 369-70 (W.D.N.Y. 2005) (reiterating that the refusal to process an inmate grievance or see that it is properly processed does not create a § 1983 claim); accord Boddie v. Alexander, 356 F. App'x 438, 441 (2d Cir. 2009) (summary order) (concluding that allegations that "the State failed to assist [plaintiff's]

---

[5] Nor would these allegations give rise to a due process claim under the Fourteenth Amendment. See, e.g., Johnson v. Barney, 2007 WL 900977, at *1 (S.D.N.Y. Mar. 22, 2007) (explaining that "[p]rison grievance procedures do not confer any substantive rights upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment" (citations and quotation marks omitted)).

16

ability to raise a grievance—not that the State obstructed his ability to raise a grievance" failed to state a cognizable First Amendment claim (emphasis in original)). Indeed, Holmes may directly petition the government for redress in federal court, as he has done here. Cf. Bill Johnson's Rest., Inc. v. NLRB, 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.").

Moreover, even under a liberal construction of the Amended Complaint, Holmes fails to state a claim for First Amendment retaliation. Under the law of this Circuit, a prima facie First Amendment retaliation claim requires a plaintiff to allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004). Courts approach prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quotation marks omitted). Accordingly, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" suffices. Davis, 320 F.3d at 353 (quotation marks omitted).

Here, Holmes' contentions that he was merely informed that the grievance procedure did not cover the chemical spray incidents do not plausibly allege adverse action that rise to the level of a constitutional violation. Cf. Vincent v. Sitnewski, 117 F. Supp. 3d 329, 340 (S.D.N.Y. 2015) (explaining that even "insulting or disrespectful comments directed at an inmate" and "verbal responses of resentment or even ridicule," without more, do not constitute adverse action). In addition, Holmes' allegations that he and another inmate had either attempted

17

to file or did file grievances arising from exposure to chemical spray undercut the inference that these types of comments by grievance staff would deter similarly situated individuals from filing grievances. Accordingly, the motion to dismiss Holmes' First Amendment claims is granted.

III. Leave to Amend

In this Circuit, district courts generally do not dismiss pro se complaints without granting leave to amend at least once if "'a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (citation omitted). Here, further leave to amend is unwarranted. The parties appeared for a pre-motion conference on October 20, 2017, during which the Moving Defendants raised precisely the same grounds on which they rely in their motion. Cf. Tamar v. Mind C.T.I., Ltd., 723 F. Supp. 2d 546, 559 (S.D.N.Y. 2010) (dismissing claims with prejudice on the basis that "the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies"). Despite providing Holmes an opportunity to replead after discussing the potential defects in the original complaint, Holmes failed to cure those deficiencies in his Amended Complaint.

This Court is mindful of the special solicitude that must be afforded to pro se litigants. But even liberally construed, the Amended Complaint does not suggest that Holmes has a valid constitutional claim "that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). The defects with Holmes' claims are substantive, and "better pleading will not cure [them]." Cuoco, 222 F.3d at 112. Accordingly, his claims are dismissed without leave to amend.

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss is granted. The Clerk of Court is directed to terminate all pending motions, mail a copy of this Opinion & Order to Holmes, and mark this case as closed.

Dated: September 4, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.